IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VICTORIA L. N., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| FRANK BISIGNANO,[1] Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

Case No. 25-cv-00026-SH

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Victoria L. N. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits.

**I.   Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage

---

[1] Effective May 7, 2025, pursuant to Fed. R. Civ. P. 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)–(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Background and Procedural History

Plaintiff applied for Title II disability benefits on June 8, 2023, with a protective filing date of June 7, 2023. (R. 174–75, 17.) In her application, Plaintiff alleged she has been unable to work since June 23, 2021, due to conditions including depressive disorder, panic disorder, left lower extremity radiculopathy, lumbar spinal stenosis, lumbar herniated disc, right lower extremity radiculopathy, right hip strain status post stress fracture, and anxiety. (R. 174, 193.) Plaintiff was 33 years old on the date of the Administrative Law Judge's ("ALJ") decision. (R. 30, 174.) Plaintiff has two years of college education and past relevant work as a reservation agent and dining room attendant. (R. 194, 60.)

Plaintiff's claim was denied initially and upon reconsideration. (R. 83–87, 90–93.) Plaintiff then requested and received a hearing before an ALJ. (R. 95–96, 36–64.) The ALJ denied benefits and found Plaintiff not disabled. (R. 17–30.) The Appeals Council denied review on November 15, 2024 (R. 1–6), rendering the Commissioner's decision final, 20 C.F.R. § 404.981. Plaintiff now appeals.

### III. The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through September 30, 2026. (R. 19.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (*Id.*) At step two, the ALJ found Plaintiff to have the following severe impairments: (1) degenerative disc disease with radiculopathy status post L5-S1 discectomy; (2) degenerative joint disease status post femoral head fracture of the right hip; (3) obesity; (4) panic disorder; and (5) depressive disorder. (R. 19–20.) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 20–21.)

The ALJ then determined that Plaintiff had the RFC to perform sedentary work with various exertional limitations, and the following mental limitations:

> She is further limited to understanding, remembering, and applying information simple but not detailed or complex instructions, limited to simple work-related judgement decisions, limited to occasional changes in a routine work setting, limited to occasional interaction with supervisors and co-workers but no interaction with the public, and is able to perform work requiring a regular and/or specific production rate.

(R. 21–22.) The ALJ provided a recitation of the evidence that went into this finding. (R. 22–28.) At step four, the ALJ found Plaintiff unable to perform her past relevant work. (R. 28.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as semiconductor bonder, touch-up screener, and final assembler. (R. 29.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 30.)

## IV. Issues

On appeal, Plaintiff asserts two points of error, arguing the ALJ: (1) failed to consider the limiting effects of Plaintiff's obesity on her mental impairments (Dkt. No. 9 at 10–14); and (2) failed to resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles (4th ed. 1991) (the "DOT") at step five (*id.* at 3–10). While the Court finds no error in the consideration of Plaintiff's obesity, it agrees the ALJ failed to resolve an apparent conflict and reverses the Commissioner's decision.

## V. Analysis

### A. Plaintiff's Obesity and the RFC Analysis

As noted, the ALJ found Plaintiff's obesity to be a severe impairment at step two. (R. 19.) Plaintiff does not dispute that the ALJ then considered obesity in combination with her <u>physical</u> impairments, as contemplated by Social Security Ruling ("SSR") 19-2p, 2019 WL 2374244 (May 20, 2019). (Dkt. No. 9 at 11.) However, she argues the ALJ did not "properly discuss and account for Claimant's obesity's effects in conjunction with her proven severe mental impairments" at the RFC stage. (*Id.*)

#### 1. SSR 19-2p–Generally

Pursuant to SSR 19-2p, "when established by objective medical evidence," obesity may constitute a medically determinable impairment which, "in combination with another impairment(s)[,] may or may not increase the . . . functional limitations of the other impairment(s)." 2019 WL 2374244, at *2. ALJs "must consider the limiting effects of obesity when assessing a person's RFC." *Id.* at *4. In cases involving obesity—particularly cases involving obesity and sleep apnea—"fatigue may affect the person's physical and mental ability to sustain work activity." *Id.* Because the "combined effects of obesity with another impairment(s) may be greater than the effects of each of the

impairments considered separately," ALJs "consider all work-related physical and mental limitations, whether due to a person's obesity, other impairment(s), or combination of impairments." *Id.*  That said, "general assumptions about the severity or functional effects of obesity with another impairment(s)" will not be made; each case is evaluated based on the information in that case's record.  *Id.*

        2.     **RFC—Generally**

The requirements of SSR 19-2p largely track an ALJ's duties at the RFC stage.  To proceed to steps four and five of the sequential evaluation, the ALJ must first determine a claimant's RFC.  That is, a claimant may have impairments and related symptoms, and those symptoms may cause physical or mental limitations that affect what the claimant can do in a work setting.  20 C.F.R. § 404.1545(a)(1).  The claimant's RFC is what's left— "the most [the claimant] can still do despite [her] limitations."  *Id.*  The Commissioner makes this decision based on "all the relevant medical and other evidence" in the case record.  *Id.* § 404.1520(e).

As SSR 96-8p clarifies, RFC is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  1996 WL 374184, at *3 (July 2, 1996).  The analysis must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence," and must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved."  *Id.* at *7.

        3.     **Assessing the limiting effects of Plaintiff's obesity**

Here, Plaintiff argues the ALJ ignored evidence showing her obesity "affected her mental health and impairments."  (Dkt. No. 9 at 13–14.)  But the ALJ did not ignore evidence.  While the ALJ did not recount every portion of the record, he adequately

discussed evidence that supported his decision, as well as evidence he chose not to rely on and the probative evidence he rejected. *See Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). This is all that was required. Plaintiff points to nothing demonstrating that her obesity limited her ability to mentally function to an extent that it would have resulted in any greater limitations than those in the RFC.

For instance, Plaintiff points to a record notation that she "complained of nearly every day feeling fatigued after sleeping and during her waking time." (Dkt. No. 9 at 13 (citing R. 561).) But Plaintiff made this complaint six months before her alleged disability onset. More importantly, the ALJ considered Plaintiff's testimony about her sleep disruption (R. 23) and reports of tiredness (R. 26). The ALJ further considered how Plaintiff's mental impairments affected her ability to sustain work activity. (R. 22–23, 27.[2]) *See also* SSR 19-2p, 2019 WL 2374244, at *4 (in "cases involving obesity, fatigue may affect the person's . . . mental ability to sustain work activity"). Plaintiff provides no evidence indicating obesity-related fatigue required greater restrictions (or, indeed that there were any such restrictions).

Further, the remaining evidence Plaintiff highlights fails to show an obesity-related limitation that the ALJ failed to consider. Plaintiff notes she engaged in a VA weight management program. (Dkt. No. 9 at 13.) But the reports referenced in her brief come from exhibits considered by the ALJ (*see, e.g.*, R. 25 (citing Ex. 2F)), and they do not speak to work-related mental limitations that were exacerbated by obesity. Plaintiff also points to her statement that she "feels better when she moves around, which helps

---

[2] "Therefore, the [ALJ] finds that the moderate limitations from the claimant's symptoms, treatment, and mental impairments, considered singularly and in combination, limit the claimant's mental [RFC] for . . . performing work requiring a regular and/or specific production rate with only occasional changes in a routine work setting . . . ." (R. 27.)

with her mental health and desire to eat better." (R. 809, 812.) Again, this is in the midst of an exhibit considered by the ALJ (*see, e.g.*, R. 25 (citing Ex. 6F)), and again, this note does not speak to a work-related mental limitation exacerbated by obesity. Additionally, the ALJ considered this evidence for the proposition that Plaintiff was exercising to assist with mobility and mental health. (R. 25 (citing R. 812).)

Overall, these records point to no greater limitation in mental functioning than that assigned by the ALJ, and they do not indicate that obesity exacerbated her mental impairments. The Court finds no reason to discount the ALJ's statement that he "considered both the individual and cumulative effects of the claimant's obesity in assessing the residual functional capacity . . . ." (R. 25.) *See also Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("our general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter").

### B. Apparent Conflict between VE Testimony and the DOT

Next, the Court considers Plaintiff's argument that the ALJ erred in relying on VE evidence at step five without resolving an apparent conflict between the VE's testimony and the DOT. (Dkt. No. 9 at 3–7.) Plaintiff argues that the reasoning level requirements of the jobs of semiconductor bonder and touch-up screener (level 2) are in apparent conflict with her RFC limitations to "understanding, remembering, and applying information simple but not detailed or complex instructions" and to "simple work-related judgement decisions." (*Id.* at 4–5.) The Court agrees.

#### 1. Step Five

At step five, it is the Commissioner's burden "to show that the claimant retains sufficient RFC to perform work in the national economy, given her age, education, and work experience." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation

modified). An ALJ may rely on VE testimony to satisfy the step-five burden and identify jobs a claimant can perform. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).

In this case, the ALJ presented the VE with a hypothetical that was not identical to the RFC in his decision.[3] (*Compare* R. 61 *with* R. 21–22.) In response to the ALJ's hypothetical, the VE identified three sedentary jobs a person of Plaintiff's age, education, and work experience could perform: (1) semiconductor bonder, with 21,000 jobs in the national economy;[4] (2) touch-up screener, with 37,000 jobs;[5] and (3) final assembler, with 42,000 jobs.[6] (R. 61.) Based on this testimony, the ALJ concluded Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. 29.)

### 2. Conflicts and the DOT—Generally

While an ALJ can rely on VE testimony at step five, such reliance has limits. An ALJ has a duty to develop the record, which includes questioning the VE about the source of their opinions and any deviations from publications like the DOT. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). The "ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of

---

[3] The hypothetical referred to someone limited to "understanding, remembering, and carrying out simple job instructions" (R. 61), while the RFC limited Plaintiff to "understanding, remembering and applying information simple but not detailed or complex instructions" (R. 22). Otherwise, the mental limitations were the same. Plaintiff does not argue that this difference constituted error or robbed the step-five decision of evidentiary support. The Court, therefore, does not consider the issue. *See Sturgeon v. Colvin*, No. 15-CV-52-PJC, 2016 WL 1248905, at *5 (N.D. Okla. Mar. 29, 2016) ("A Social Security claimant must adequately develop arguments before a district court.").

[4] DOT § 726.685-066, 1991 WL 679631.

[5] DOT § 726.684-110, 1991 WL 679616.

[6] DOT § 713.687-018, 1991 WL 679271.

9

nondisability." *Id.*; *see also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a . . . decision about whether the claimant is disabled.").[7]

However, not every discrepancy between an expert's testimony and the DOT amounts to an apparent conflict requiring further explanation. "All kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation." *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (citation modified), *quoted in Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007).[8] Only conflicts that are "apparent or obvious" require an ALJ to ask the VE "more specific follow-up questions." *Brown v. Berryhill*, No. 17-cv-00556-GKF-GBC, 2019 WL 2488730, at *6 (N.D. Okla. Mar. 11, 2019).

### 3. Alleged conflict in this case

Here, the alleged conflict arises from the GED reasoning level of 2 assigned to the semiconductor bonder and touch-up screener jobs. *See* DOT § 726.685-066, 1991 WL 679631 (semiconductor bonder); DOT § 726.684-110, 1991 WL 679616 (touch-up screener). The DOT appends a "definition trailer" to each job, which is comprised of a number of selected occupational characteristics, including the General Educational Development ("GED") Scale. *See* DOT, app. C, 1991 WL 688702 (4th ed. 1991). The GED

---

[7] Effective January 6, 2025, the SSA rescinded and replaced SSR 00-4p. *See* SSR 24-3p, 89 Fed. Reg. 97158 (Dec. 6, 2024). SSR 00-4p remains applicable to this case, as it was in effect when Plaintiff's claim was filed and adjudicated. *See id.* at 97159 n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

[8] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

Scale is divided into three subparts: Reasoning Development, Mathematical Development, and Language Development. *Id.* There are six levels for each GED Scale subpart, with level one representing the lowest development level and level six representing the highest. *Id.* The lowest two reasoning development levels require the following:

> LEVEL 1
>
> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> LEVEL 2
>
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

DOT, app. C, 1991 WL 688702 (4th ed. 1991).

Here, the RFC limits Plaintiff to "simple but not detailed or complex instructions." (R. 22.) Plaintiff argues a "limitation to simple tasks is inconsistent with reasoning level 2 and with the activities required by that reasoning level." (Dkt. No. 9 at 6 (citing *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016), *and Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997).)

### 4. Reasoning level 2 and "simple" instructions/tasks

The Court has previously rejected the bright-line argument Plaintiff is making based on *Paulek* and *Lucy*. First, the undersigned has found no apparent conflict between an RFC limitation of "simple, routine tasks" and reasoning level 2. *See James A.M. v. Kijakazi*, No. 20-CV-00372-JED-SH, 2022 WL 1510563, at *4–6 (N.D. Okla. Jan. 26, 2022). Second, the undersigned has found no apparent conflict between "simple, routine instructions and tasks" and reasoning level 2. *See Ashley I.S.C. v. Kijakazi*, No. 22-CV-

00201-SH, 2023 WL 5628598, at *7–8 (N.D. Okla. Aug. 31, 2023). Plaintiff has provided no argument to convince the Court that the reasoning in these cases should be revisited,[9] and the Court declines to repeat its reasoning here. With no bright-line rule that "simple" necessarily excludes reasoning level 2, the Court looks to the limitations found by the ALJ and compares them to the DOT in order to determine whether an apparent conflict exists. In the specific circumstances of this case, the Court finds that it does.

### 5.    Interaction of the RFC and DOT

Here, the RFC found Plaintiff:

> limited to understanding, remembering, and applying information simple but not detailed or complex instructions, limited to simple work-related judgement decisions, limited to occasional changes in a routine work setting, limited to occasional interaction with supervisors and co-workers but no interaction with the public, and is able to perform work requiring a regular and/or specific production rate.

(R. 22.) Meanwhile, the reasoning level for two of the jobs identified by the VE required an ability to:

> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

DOT, app. C, 1991 WL 688702. The Court is cognizant that it should avoid parsing the ALJ's language "too finely." *Carver v. Colvin*, 600 F. App'x 616, 620 (10th Cir. 2015). The Court further allows that the ALJ did not just talk about instructions but also noted

---

[9] Plaintiff cites additional district court cases not already addressed by this Court in *James A.M.* or *Ashley I.S.C.* However, those cases rely on the same reasoning or cases that this Court has previously found unpersuasive. *See Brewer v. Comm'r of Soc. Sec. Admin.*, No. CIV-16-576-SPS, 2018 WL 4562918, at *3–4 (E.D. Okla. Sept. 24, 2018); *Dugan v. Berryhill*, No. 17-2165-SAC, 2018 WL 1400448, at *5–6 (D. Kan. Mar. 20, 2018); *Whitehead v. Berryhill*, No. CIV-15-422-JHP-SPS, 2017 WL 1040735, at *3 (E.D. Okla. Mar. 1, 2017), *R&R adopted*, 2017 WL 1025877 (E.D. Okla. Mar. 16, 2017); *Deveraeaux v. Astrue*, No. 12-CV-1168-WJM, 2013 WL 2393075, at *8 (D. Colo. May 31, 2013); *Allen v. Barnhart*, No. C-02-3315 EDL, 2003 WL 22159050, at *10 (N.D. Cal. Aug. 28, 2003).

that Plaintiff would be getting these instructions in a routine work setting. Even so, the ALJ specifically noted that the instructions could <u>not</u> be detailed.[10] Thus, there was an apparent conflict between this RFC and jobs that required Plaintiff be able to carry out detailed (if uninvolved) instructions. The ALJ failed to investigate and elicit a reasonable explanation from the VE for this conflict,[11] which was an error.

### C. Sufficient Number of Jobs in the National Economy

Having found an unresolved apparent conflict between the RFC and two of the jobs identified by the VE, the Court must now examine whether the ALJ's step-five error was harmless. The Commissioner contends that it was, because 42,000 jobs remain nationally. (Dkt. No. 14 at 8–9.) The Court disagrees.

Under the Act, work exists in significant numbers in the national economy when it exists in such numbers either in the region where the claimant lives or in several other regions of the country. 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1566(a). Determining what constitutes a significant number of jobs is normally a question of fact for the ALJ to decide based on "common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)). Here, the ALJ did not find that 42,000 was a significant number of remaining jobs in the

---

[10] Had the ALJ limited Plaintiff to instructions that were "simple but not detailed <u>and</u> complex," the Court could understand the Commissioner's argument that any conflict was not apparent.

[11] In reality, of course, the VE was never given an opportunity to opine whether these jobs were consistent with someone limited to "simple but not detailed or complex instructions," because she was only asked about "simple job instructions." (R. 61.)

13

national economy. Instead, he found that, overall, there were sufficient jobs, citing a combined total of 100,000. (R. 29.)

A reviewing court may supply a missing dispositive finding of fact under the rubric of harmless error where "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145. However, this Court must be cautious in "deciding in the first instance that a particular number was significant under the circumstances," because it must "avoid usurping the administrative tribunal's responsibility to find the facts" and must not violate "the general rule against post hoc justification of administrative action . . . ." *Id.* at 1144–45.

The Tenth Circuit has held that an ALJ's erroneous inclusion of conflicting jobs at step five is harmless error only where the remaining nonconflicting jobs exist in sufficiently significant numbers in the national economy. *See, e.g., Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (finding 1.34 million remaining jobs in the national economy significant); *Shockley v. Colvin*, 564 F. App'x 935, 940 (10th Cir. 2014) (215,000 remaining jobs); *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (152,000 remaining jobs). These numbers have consistently been higher than the 42,000 remaining jobs in this case.[12] *See Troy E. W. v. O'Malley*, No. 23-CV-00317-SH, 2024 WL 4227044, at *5–6 (N.D. Okla. Sept. 18, 2024) (collecting cases and declining to find

---

[12] The Commissioner asserts that the Tenth Circuit implied that 11,000 national jobs was significant in *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009). The undersigned has previously rejected that argument, *see, e.g., Christopher A. M. v. Kijakazi*, No. 21-CV-00417-SH, 2023 WL 2682364, at *5–6 (N.D. Okla. Mar. 29, 2023), and sees no reason to revisit that rejection here. The Court further rejects the Commissioner's citation to *Lynn v. Colvin*, 637 F. App'x 495, 499 (10th Cir. 2016), which did not discuss the significant number of jobs required for a harmless error analysis.

122,000 remaining jobs harmless); *see also Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016).[13]

As such, given the Tenth Circuit's preference that the ALJ evaluate numerical significance in the first instance—and that the district court supply dispositive findings only in exceptional circumstances—the undersigned declines to conclude that 42,000 jobs in the national economy is a significant number as a matter of law, such that "no reasonable administrative factfinder . . . could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145. Consequently, the ALJ's error at step five was not harmless.

## VI.  Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is REVERSED and REMANDED.

**SO ORDERED** this 2nd day of March, 2026.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[13] *Id.* ("there is no bright-line answer to how many jobs are enough for a court to say, as a matter of law, that the number is significant, but the number appears to be somewhere between 100 [statewide], the number of jobs in *Allen* that we refused to consider significant for harmless-error purposes, and 152,000 [nationally], the lowest number of jobs we have considered (in *Stokes*) to be sufficient so far for application of harmless error").